**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| International Union of Operating Engineers, Local 150, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | Judge: |
| Michael Hogan, individually, d/b/a Hogan Excavating, | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO (hereinafter, "Local 150"), brings this action to enforce two arbitration awards entered against Defendant Michael Hogan, individually, d/b/a Hogan Excavating ("the Company"). In support, Local 150 states as follows:

### Count I
### Grievance No. 21-3-086

1. This Court has jurisdiction over this action pursuant to Section 301 of the Labor-Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185.

2. Venue is proper in this Court pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, because Local 150 maintains its principal office within the geographic jurisdiction of this Court.

3. Local 150 is a labor organization representing employees in an industry affecting commerce within the meaning of Section 2(5), (6), and (7) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 152(5), (6), and (7), and Section 301 of the LMRA, 29 U.S.C. § 185. Its principal offices are located at 6200 Joliet Road, Countryside, Cook County, Illinois.

4.	The Company is a sole proprietorship and an employer in an industry affecting commerce within the meaning of Sections 2(2), (6), and (7) of the NLRA, 29 U.S.C. §§ 152(2), (6), and (7), and Section 301 of the LMRA, 29 U.S.C. § 185. The last known mailing address for the Company is 6606 Barnard Mill, Ringwood, McHenry County, Illinois 60107.

5.	On or about August 15, 2013, the Company executed a "Memorandum of Agreement" with Local 150 (Exhibit A).

6.	By its terms, the Memorandum of Agreement between the Company and Local 150 adopted the collective bargaining agreement known as the Mid-America Regional Bargaining Association (MARBA) Heavy and Highway and Underground Agreement ("CBA") (Exhibit B).

7.	Article XIII, Section 1, of the CBA effective June 1, 2021, through May 31, 2024, entitled "Grievance and Arbitration," states as follows (Ex. B at 37-41):

**ARTICLE XIII**

**SECTION 1 - GRIEVANCE AND ARBITRATION**

For the purpose of this Agreement, the term "grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one or the other of the aforesaid persons or organization is violating or has violated this Agreement.

**STEP 1.** A grievance shall first be taken up between the Union's Business Representative assigned to the job and a designated representative of the Employer. The Union must file the grievance within forty-five (45) days of the date of occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed through this procedure.

The liability shall be for one (1) year of the violation, verified by audit. Audit fees shall be paid for by the Company, along with a ten percent (10%) penalty payable to the Union. This one (1) year limitation on liability shall not apply to grievances for unpaid fringe benefits.

**STEP 2.** In the event the grievance cannot be resolved within seven (7) working days of the STEP ONE conference, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and the

Contractor at a pre-grievance hearing to be held at the office of Local 150, 6200 Joliet Road, Countryside, Illinois 60525, unless another location or teleconference is mutually agreed to.

**STEP 3.** In the event the grievance cannot be resolved by STEP TWO, the written grievance shall be submitted within fifteen (15) days to the Joint Grievance Committee created in this Article.

The Union and Associations (Contractors Association of Will & Grundy Counties; Excavators, Inc.; and Mid-America Regional Bargaining Association) have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union. Each Association (Contractors Association of Will & Grundy Counties; Excavators, Inc.; and Mid-America Regional Bargaining Association) is entitled to appoint an Employer representative on each Committee; however, there may not be more than one Employer member from any Association on the Committee. The Union or Associations may appoint alternate members, but the limitation of a single appointed member from each Association shall apply. The Joint Grievance Committee may adopt procedural rules which shall be binding upon all parties to the Joint Grievance Committee proceedings.

The Joint Grievance Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance. The Joint Grievance Committee shall have the authority to determine and assess remedies for violations of this Agreement, including, but not limited to an award of back pay and equivalent benefits to a fund designated by Local 150. The Joint Grievance Committee or the Arbitrator may decide questions of both procedural and substantive arbitrability.

There will be a "cap" of $50,000.00 placed on the monetary relief or remedy that can be awarded by the JGC for any grievance. Any grievance seeking more than $50,000.00 that is not resolved at Steps 1 or 2 of the grievance procedure may be submitted by the grieving party directly to Step 4 (neutral arbitration) after Step 2 within 30 days after the Step 2 meeting.

If a grievance is submitted to be heard by the JGC at Step 3, a "cap" of $50,000.00 shall be the maximum monetary relief that can be granted *in toto* by the JGC without regard to whether the grievance involves claims on behalf of multiple grievants, or seeks relief measured by back pay and benefits due multiple Union members, or presents continuing violation claims.

Grievances processed directly to Step 4 from Step 2 shall not be affected by or limited to the "cap" amount as potential monetary relief at arbitration.

Where the Joint Grievance Committee, by majority vote, resolves a grievance no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this Agreement.

**STEP 4.** If the Joint Grievance Committee is unable to resolve a grievance by majority vote, the grievance may be submitted within thirty (30) days to a neutral arbitrator. If the Joint Grievance Committee is unable to resolve the grievance, the Employer shall be required to either post a bond or deposit into an escrow account

3

designated by the Union $25,000.00 (representing a potential award of attorney fees and costs) plus the amount claimed in the grievance within fourteen days (14) of the date of the Joint Grievance Committee hearing. If the Employer fails to either post a bond or deposit the required amount into the escrow account within fourteen (14) days the Union shall have the right to resort to all legal and economic remedies, including the right to strike and picket until grievance has been resolved by arbitrator or fully remedied through a signed settlement agreement between the parties. If there are multiple grievances between the Union and a single Employer which relate to the same provision of the Agreement, the maximum aggregate amount that Employer shall be required to post a bond for or deposit into an escrow account shall be $250,000.00 for the grievances related to that provision of the Agreement. If the Union and the Association or the Employer, as the case may be, cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American Arbitration Association. The cost of such an arbitrator shall be borne by the losing party. In addition, the prevailing party (as defined below) shall be awarded its reasonable attorney's fees and costs not to exceed $25,000.00.

If a grievance proceeds directly to Step 4 from Step 2 under this letter, the losing party at arbitration shall pay the prevailing party's reasonable attorneys' fees and costs, not to exceed $25,000.00 *in toto*. Documentation of such fee and cost expenditures must be provided upon request.

If a grievance proceeds directly to Step 4 from Step 2 under this letter, the losing party at arbitration shall also be responsible for payment of both its share and the prevailing party's share of the arbitrator's and court reporter's fees and expenses.

For purposes of this provision, the term "prevailing party" in a grievance claiming monetary relief exceeding $50,000.00 shall mean a final award issued by an arbitrator sustaining the grievance in full and awarding at least 70% of the requested monetary relief.

If an award issues in favor of the grieving party on some but fewer than all of the claims presented to the arbitrator, there can be no shifting of fees or costs for that portion of the grievance which is denied by the arbitrator.

If the monetary relief awarded by the arbitrator to the grieving party is at less than the 70% threshold, the parties shall bear their own attorneys' fees and costs, and split equally the arbitrator's and court reporter's fees and expenses.

If the grievance is denied in full by the arbitrator, the grieved party shall be the "prevailing party" and shall receive fees and costs per the provisions set forth above.

The time limits provided in this Section may be extended by mutual written consent of the Union and the Association and/or the Employer or at the discretion of the Joint Grievance Committee.

Neither the Joint Grievance Committee nor an arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement or make a new Agreement.

Decisions of the Joint Grievance Committee and Arbitration Awards shall be complied with within seven (7) days of receipt of the decision by the losing party. A party which fails to comply with the seven (7) day period shall be required to pay an

additional ten percent (10%) of the amounts as owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party. There shall be no lockout by an Employer during the term of this Agreement. Except as provided above or in Article XVIII, Sections 1 and 2 and 4 of this Agreement, there shall be no strikes or work stoppages by the Union during the term of this Agreement.

8. On October 28, 2021, a dispute arose between Local 150 and the Company under the terms of the CBA while the Company performed work at a jobsite in Algonquin, Illinois. Specifically, Company Owner Mike Hogan was operating a case excavator on the jobsite, resulting in non-bargaining unit members performing work, in violation of Article I, Sections 1, "Bargaining Unit," and 11(a), "Assignment of Work;" Article 12, Section 1, "Wages and Fringes;" and Article 15, "Hiring," of the CBA. The parties attempted to resolve the dispute at a Step One conference pursuant to the CBA but were unable to do so.

9. Pursuant to Step Two of the CBA, on October 28, 2021, Local 150 reduced the grievance against the Company to writing and sought to set up a meeting whereby it could be resolved. The parties were unable to resolve the dispute at the Step Two proceeding. Consequently, pursuant to Step Three of the contractual grievance procedure, Local 150 submitted the grievance against the Company to the Joint Grievance Committee (hereinafter referred to as the "JGC").

10. On December 1, 2021, the JGC conducted a hearing into the grievance brought by Local 150 against the Company. Based upon the evidence presented at the hearing, the JGC awarded Local 150 $4,359.29 in lost wages and benefits (Exhibit C).

11. On or about December 1, 2021, Local 150 sent by electronic and priority mail to the Company a copy of the JGC Award against the Company.

12. The Company failed to comply with the JGC Award within seven (7) days. Therefore, pursuant to Step Three of the contractual grievance procedure, the Company is required to pay an additional ten percent (10%) of all amounts owed as liquidated damages for its failure to comply with the Decision and Award.

13. In addition, the Company must, pursuant to the CBA, pay the attorneys' fees and costs of Local 150 incurred due to the necessity of pursuing this action.

WHEREFORE, Local 150 prays that the Court enter an order:

A. enforcing the JGC Award finding the Company in violation of the CBA;

B. compelling Michael Hogan, individually, d/b/a Hogan Excavating to pay Local 150 $4,359.29 in lost wages and benefits and $435.93 representing ten percent (10%) liquidated damages, or a total of **$4,795.22** for violation of the CBA;

C. awarding Local 150 its costs and attorneys' fees for this action; and

D. awarding such other relief as the Court deems just and proper.

## Count II
### Grievance No. 21-3-087

1-7. For Paragraphs 1 through 7 of this Count II of the Complaint, Plaintiffs restate and reallege paragraphs 1 through 7 of Count I of the Complaint as is fully set forth in Count II herein.

8. On October 28, 2021, a dispute arose between Local 150 and the Company under the terms of the CBA while the Company performed work at a jobsite in Algonquin, Illinois. Specifically, Company Owner Mike Hogan refused to allow a Local 150 Business Representative access to the jobsite, in violation of Article I, Section 5, "Access to Premises," of the CBA. The parties attempted to resolve the dispute at a Step One conference pursuant to the CBA but were unable to do so.

9. Pursuant to Step Two of the CBA, on October 28, 2021, Local 150 reduced the grievance against the Company to writing and sought to set up a meeting whereby it could be resolved. The parties were unable to resolve the dispute at the Step Two proceeding. Consequently, pursuant to Step Three of the contractual grievance procedure, Local 150 submitted the grievance against the Company to the Joint Grievance Committee (hereinafter referred to as the "JGC").

10. On November 8, 2021, the JGC conducted a hearing into the grievance brought by Local 150 against the Company. Based upon the evidence presented at the hearing, the JGC awarded Local 150 as follows (Exhibit D) (emphasis in original):

> 3. The Employer shall pay to I.U.O.E. Local 150 Scholarship Fund the sum of **$10,000.00** from the date of violation October 28, 2021 through November 4, 2021. An additional $10,000.00 per week will be due by November 11, 2021 and each week thereafter if access to the job site has not been granted. Employer shall notify the Union and Association once access has been granted.

11. On or about November 8, 2021, Local 150 sent by electronic and priority mail to the Company a copy of the JGC Award against the Company.

12. The Company failed to comply with the JGC Award within seven (7) days. Therefore, pursuant to Step Three of the contractual grievance procedure, the Company is required to pay an additional ten percent (10%) of all amounts owed as liquidated damages for its failure to comply with the Decision and Award.

13. In addition, the Company must, pursuant to the CBA, pay the attorneys' fees and costs of Local 150 incurred due to the necessity of pursuing this action.

WHEREFORE, Local 150 prays that the Court enter an order:

A.     enforcing the JGC Award finding the Company in violation of the CBA;

B.     compelling Michael Hogan, individually, d/b/a Hogan Excavating to pay Local 150 $110,000.00 in contractual penalties and $11,000.00 representing ten percent (10%) liquidated damages, or a total of **$121,000.00** for violation of the CBA;

C.     awarding Local 150 its costs and attorneys' fees for this action; and

D.     awarding such other relief as the Court deems just and proper.

Dated: October 18, 2022                           Respectfully submitted,

                                                      By: /s/ Robert A. Paszta
                                                          One of the Attorneys for Plaintiff

Names and Address of Attorneys for Plaintiff:
Robert A. Paszta *(rpaszta@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL 60525
Ph. 708/579-6663
Fx. 708/588-1647